UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

KYRUS ROGERS, INDIVIDUALLY
AND ON BEHALF OF HIS MINOR
CHILDREN, ET AL.

CIVIL ACTION

VERSUS

NO. 15-706-JWD-RLB

AVERITT EXPRESS, INC., ET AL.

### RULING AND ORDER

Before the Court is the Motion for Sanctions Based on Spoliation of Evidence brought by defendants Averitt Express, Inc. and Larry Killian ("Defendants"). (Doc. 65.) The motion is opposed by plaintiffs Kyrus Rogers, et al. ("Plaintiffs"). (Doc. 66.) Defendants filed a reply brief. (Doc. 69.) For the reasons which follow, the motion is denied in part and granted in part.

### BACKGROUND

This case arises out of an April 18, 2014 accident between a commercial vehicle being driven by defendant Larry Killian ("Killian") and a vehicle being driven by plaintiff Kyrus Rogers ("Rogers"). Rogers urges he suffered significant injuries to his "disks, ligaments and muscles of his spine, causing lower back, neck and joint pain" (Doc. 1-2 at 3-4), and claims entitlement to substantial damages. Defendants claim Rogers' injuries are minimal, if he suffered any injury at all. This Court has previously granted Plaintiffs' Motion for Summary Judgment that Killian was at fault in the accident and Rogers was free from fault. However, the Court denied that motion as to the issues of causation and damages. (Doc. 76.)

Defendants claim that they were only advised of Rogers' spine surgery the day before it was scheduled to occur and therefore were deprived of their right under Federal Rule of Civil Procedure 35 to have a physician of their choosing examine Rogers before the surgery took

1

place. They therefore urge the Court to exclude evidence of the surgery or, alternatively, instruct the jury that it may impose an adverse inference regarding the necessity for the surgery. (Doc. 65-1 at 1.)

## ARGUMENTS OF THE PARTIES

Defendants argue that early in the litigation they "reached out to counsel to see about an early resolution before both sides incurred further expenses." (Doc. 65-1 at 2). Plaintiff's counsel responded that he would "immediately began (sic) work on a proposal for early resolution." (*Id.*) Defendants contend that Plaintiffs' counsel received reports of doctors as early as July 22, 2015 suggesting the possible need for surgery but did not immediately share this with counsel for Defendants. (*Id.*, at 2-3.)

On July 31, 2015, Defendants' counsel requested an "update on the status of Plaintiffs' proposal for resolution." (*Id.* at 3.) Plaintiffs' counsel responded on August 10, 2015 that he was "waiting on one more narrative report from Mr. Rogers' (sic) treating physician and a lost wage statement from his employer." (*Id.*) Plaintiffs' counsel did not attach nor did he mention the physicians report discussing possible surgery. (*Id.*)

In the meantime, Rogers continued to see his physicians and discuss anticipated surgery, which events were not reported to counsel for Defendants. (*Id.*) On September 24, 2015, Defendants' counsel emailed Plaintiffs' counsel again inquiring about a settlement proposal. (*Id.*) The following day, counsel for Plaintiff "inform[ed] [Defendants' counsel] that Mr. Rogers was recommended for surgery." (*Id.*) Defendants' counsel argues that he immediately asked for the type of surgery which had been recommended and when it was scheduled so that he could check with his clients about an IME (independent medical examination). (*Id.* at 3-4.) By return email

on the same day, counsel for Plaintiffs stated he would "find out the surgery recommended and the schedule." (*Id.*, citing Exhibit C, Doc. 65-4 at 1-2.)

On September 30, 2015, five days later, Plaintiffs' counsel informed counsel for Defendants that Rogers had been recommended for a cervical discectomy and fusion at two levels but "[did] not have a surgical schedule at this time." (*Id.* at 4, citing Exhibit F, Doc. 65-7 at 1.) Rogers' medical records produced after his surgery show that, on October 6, 2016, Rogers' treating doctor scheduled his surgery on an expedited basis for October 22, 2016. (*Id.* at 4, citing Exhibit D to motion, Doc. 65-5 at 8-10.) However, Plaintiffs' counsel did not unilaterally advise counsel for Defendants. Rather, not having heard from Plaintiffs' counsel, Defendants' counsel called Plaintiffs' counsel on October 12, 2015 asking for the medical records and the surgical recommendation. (*Id.*) The following day, October 13, Plaintiffs' counsel responded by emailing what he claimed was a "surgical recommendation from Dr. Brennan and medical records from Lafayette surgical as you requested." (*Id.* citing Exhibit G, Doc. 65-8 at 2.) Defendants argue that what was sent was "nothing more than an itemized quotation for anticipated fees relating to the recommended surgery" and a few pages of irrelevant medical records. (*Id.*) Plaintiffs' counsel, argue Defendants, conspicuously did not send previous reports discussing the anticipated surgery in detail or any information about the now scheduled surgical date of October 22, 2015. (*Id.* at 4-5.)

On October 14, 2015, counsel for Defendants emailed Plaintiffs' counsel asking for "actual treatment records you could send us *so that we may further evaluate, in order to schedule an IME prior to any surgery.*" (*Id.* at 5, citing Exhibit. G, Doc. 65-8 at 1, emphasis added.) Plaintiffs' counsel did not respond until October 19, 2015 by sending certain records which did not include information about Rogers' scheduled surgery. (*Id.*)

3

When counsel for Defendants called Plaintiffs' counsel on the afternoon of October 21, 2015 to advise that the case was being removed to federal court, it was only then that Plaintiffs' counsel revealed that Rogers would undergo surgery the following day, October 22, 2015. It was not until five days later, October 27, 2015, that Plaintiffs' counsel sent a disc with complete medical records revealing in writing the October 22, 2015 surgery date.

Defendants argue that a critical issue in the case is whether Rogers suffered a serious injury in the accident and whether surgery was warranted. (Doc. 65-1 at 10.). Thus they contend that because Plaintiffs bad faith in withholding information about the scheduled surgery, valuable evidence in the form of the requested IME was "spoliated." Therefore, insist Defendants, evidence of Rogers' surgery should be excluded altogether or, alternatively, the jury should be instructed regarding an adverse presumption to be drawn on the issue of whether the surgery was necessary. Defendants direct this Court's attention to *Allen v. Resto*, No. 12-cv-2242, 2013 WL 2152177 (E.D. La. May 16, 2013) where the court found an adverse inference to be appropriate under similar circumstances, and *Zaunbrecher v. Northland Ins. Co.*, No. 14-cv-0426, 2014 WL 4221943 (W.D. La. Aug. 26, 2014) where the court deferred ruling on a similar motion to allow the parties to engage in discovery on the issue.

Plaintiffs do not disagree with the timeline of communications set forth by the Defendants. (Doc. 66 at 3-4.) Plaintiffs do not dispute that their lawyer agreed to inform Defendants' counsel about the kind of surgery and the date it was scheduled to take place. But, counsel insists that "[w]hen the specific type of surgery was known [on September 25], Plaintiffs' counsel informed Defendants within the hour." (*Id.* at 8.) Furthermore, despite the fact that Rogers' October 22 surgery was scheduled on October 6, Plaintiffs' counsel maintains he did not become aware of the date surgery was to take place until October 20, 2016 (*Id.*, at 6) and,

4

[w]hen Plaintiffs' counsel became aware of the surgery date, defendants were informed within 24 hours." (*Id.*, at 8.)

Plaintiffs explain that the reason for the two week delay between October 6 (when the surgery date was scheduled) and October 20 (when Plaintiffs' counsel learned of it) is because Plaintiff used "an intermediary service [Medical Legal Solutions or "MLS"] to arrange for and schedule his client's medical treatment." (*Id.* at 2.) Because Plaintiffs' counsel informed counsel for Defendants within 24 hours of learning the date of surgery, Plaintiffs insist their lawyer was not in bad faith and sanctions are inappropriate. "Plaintiffs' counsel did not act in bad faith when Rogers underwent surgery. Defendants were timely notified of Rogers' surgical recommendation. Defendants were provided with the requested recommendation and medical records. Defendants were timely notified of the scheduled surgery date." (*Id.*, at 9.)

Furthermore, while Plaintiffs' counsel admits that "Defendants twice mentioned a DME,"[1] first by stating he would check with his client to determine whether one was going to be needed and second, that Defendants' counsel wanted to evaluate medical records in order to schedule a DME prior to surgery (Doc. 66 at 8-9), Defendants were aware of the recommended surgery on September 25. (Doc. 65-1 at 3.)  On September 30, Defendants' counsel were told the surgery would be a two level cervical discectomy and fusion. (Exhibit F to motion, Doc. 65-7 at 1.)  Yet, "Defendants never made any attempt to actually schedule a DME, request an agreement to govern a DME, or identify a DME physician." (Doc. 66, at 8-9.) "At no time did Defendants take affirmative measures to secure a pre-surgery DME." (*Id.* at 9.)

---

[1] Plaintiffs use the term "DME" or "defendant's medical examination" instead of "IME" or "independent medical examination". The terms are used synonymously to represent the right of the Defendants under Federal Rule of Civil Procedure 35 to have the plaintiff examined by a physician of their choosing.

5

Finally, Plaintiffs argue that Defendants were not prejudiced by Rogers' surgery and therefore, for this additional reason, sanctions are inappropriate. Plaintiffs suggest that no records were destroyed and Defendants have available all of the same medical tests (e.g. MRIs) and medical records which were available to Rogers' treating physicians which can be used by Defendants' experts to support their contention that surgery was unnecessary. (*Id.*) Citing *Saverese v. Pearl River Nav.*, Inc., No. CIV. A. 09-129, 2010 WL 1817758 (E.D. La. April 30, 2010), because there was neither bad faith nor prejudice, plaintiffs contend that sanctions are inappropriate and the motion should be denied. (*Id.* at 6-7.)

In their reply memorandum, Defendants mock as "nonsensical" Plaintiffs' use of MLS as a justification for its delay in advising Defendants of the surgery date since MLS is "*a company that works for plaintiffs and their counsel.*" (Doc. 69 at 2, emphasis in original.) Thus, argue Defendants, Plaintiffs are responsible for the delay in providing the requested information whether the blame lies with Rogers himself, MLS or Plaintiffs' counsel. (*Id.*)

Defendants stress that their counsel made clear his desire to consider an IME and Plaintiffs' counsel acknowledged that request and agreed to provide the nature and date of the recommended surgery so that Defendants could complete their decision-making in this regard. The failure to provide this information, under the circumstances, meets the criteria for imposition of sanctions. Furthermore, Defendants argue they were clearly prejudiced by no longer having the opportunity to have their physician physically examine Rogers in his pre-surgical condition. (Doc. 69 at 6-7.)

## STANDARD

If the issue before the Court involved the tort of spoliation, because jurisdiction in this case is based on diversity, the Court would apply Louisiana substantive law.[2] In *Reynolds v. Bordelon*, the Louisiana Supreme Court held that there is no cause of action in Louisiana for negligent spoliation of evidence.[3] While the Louisiana Supreme Court has not yet determined whether there is a cause of action for intentional spoliation of evidence,[4] this Court previously performed an "*Erie* guess" and determined that Louisiana does in fact recognize a tort cause of action for intentional spoliation of evidence.[5]

But here the issue is not one of tort but of procedure and evidence: should the Court exclude altogether certain evidence as a sanction for the alleged spoliation of other evidence or, alternatively, apply an adverse inference as a sanction? "[F]ederal courts . . . apply federal evidentiary rules rather than state spoliation laws in diversity suits."[6] Thus, in this case, federal law governs the use of evidentiary presumptions and adverse inferences based on spoliation.[7]

Under federal law, "[s]poliation of evidence 'is the destruction or the significant and meaningful alteration of evidence.' "[8] Spoliation also includes " 'the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.' "[9]

---

[2] *Hodges v. Mosaic Fertilizer LLC*, 289 F. App'x 4, 7 (5th Cir. 2008) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)).
[3] *Reynolds v. Bordelon*, 2014-2362, p. 14 (La. 6/30/15); 172 So. 3d 589, 600.
[4] *Hodges*, 289 F. App'x at 7.
[5] *See BASF Corp. v. Man Diesel and Turbo of N.A., Inc.*, 2016 WL 5817159, M.D. La. September 30, 2016, at ** 40-41; *see also Burge v. St. Tammany Parish*, 336 F.3d 363, 374 (5th Cir. 2003).
[6] *Condrey v. SunTrust Bank of Ga.*, 431 F.3d 191, 203 (5th Cir. 2005) (citing *King v. Ill. Cent. R.R.*, 337 F.3d 550, 556 (5th Cir. 2003)).
[7] *See King*, 337 F.3d at 556 (citations omitted).
[8] *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015) (quoting *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 612 (S.D. Tex. 2010)); *see also Rimkus*, 688 F. Supp. 2d at 612 ("Spoliation is the destruction of records or properties, such as metadata, that may be relevant to ongoing or anticipated litigation, government investigation or audit") (citation omitted)).
[9] *Ashton v. Knight Transp., Inc.*, 772 F. Supp. 2d 772, 799 (N.D. Tex. 2011) (quoting *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001)).

"Allegations of spoliation, including the destruction of evidence in pending or reasonably foreseeable litigation, are addressed in federal courts through the inherent power to regulate the litigation process if the conduct occurs before a case is filed or if, for another reason, there is no statute or rule that adequately addresses the conduct."[10]

"When inherent power does apply, it is 'interpreted narrowly, and its reach is limited by its ultimate source—the court's need to orderly and expeditiously perform its duties.' "[11]

" It is well established that a party seeking the sanction of an adverse inference instruction based on spoliation of evidence must establish that: (1) the party with control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed with a culpable state of mind; and (3) the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense."[12]

Concerning the first requirement, "[g]enerally, the duty to preserve arises when a party ' "has notice that the evidence is relevant to litigation or . . . should have known that the evidence may be relevant to future litigation." ' "[13] The Fifth Circuit has recognized that "[a] party's duty to preserve evidence comes into being when the party has notice that the evidence is relevant to

---

[10] *Rimkus*, 688 F. Supp. 2d at 611 (citations omitted); *see also Yelton v. PHI, Inc.*, 284 F.R.D. 374, 378 n. 2 (E.D. La. 2012) (quoting affirmed magistrate's order which recognized that, because there was no allegation that the spoliating party "violated any discovery order or other directive by the Court[,]" the spoliation motions were "properly stated pursuant to this Court's inherent powers, and not Rule 37.").

[11] *Rimkus*, 688 F. Supp. 2d at 611 (quoting *Newby v. Enron Corp.*, 302 F.3d 295, 302 (5th Cir. 2002) (footnote omitted)).

[12] *Rimkus*, 688 F. Supp. 2d at 615–16 (citing *Zubulake v. UBS Warburg LLC (Zubulake IV)*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003)).

[13] *Rimkus*, 688 F. Supp. 2d at 612 (quoting *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008) (omission in original) (quoting *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001))). *See also Zubulake IV*, 220 F.R.D. at 216 ("The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation.") (quoting *Fujitsu Ltd.*, 247 F.3d at 436).

the litigation or should have known that the evidence may be relevant."[14] "Generally, the duty to preserve extends to documents or tangible things (defined by Federal Rule of Civil Procedure 34) by or to individuals 'likely to have discoverable information that the disclosing party may use to support its claims or defenses.' "[15]

As one district court within this circuit explained:

> These general rules [about the duty to preserve] are not controversial. But applying them to determine when a duty to preserve arises in a particular case and the extent of that duty requires careful analysis of the specific facts and circumstances. It can be difficult to draw bright-line distinctions between acceptable and unacceptable conduct in preserving information and in conducting discovery, either prospectively or with the benefit (and distortion) of hindsight. Whether preservation or discovery conduct is acceptable in a case depends on what is *reasonable,* and that in turn depends on whether what was done—or not done—was *proportional* to that case and consistent with clearly established applicable standards. . . . [T]hat analysis depends heavily on the facts and circumstances of each case and cannot be reduced to a generalized checklist of what is acceptable or unacceptable.[16]

Concerning the second requirement (culpability), different circuits adopt different standards for the level of culpability required for an adverse presumption.[17] For example, "[t]he First, Fourth, and Ninth Circuits hold that bad faith is not essential to imposing severe sanctions if there is severe prejudice, although the cases often emphasize the presence of bad faith."[18]

However, the Fifth Circuit "permit[s] an adverse inference against the spoliator or sanctions against the spoliator only upon a showing of 'bad faith' or 'bad conduct.' "[19] "Bad

---

[14] *Guzman*, 804 F.3d at 713 (citing *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 612 (S.D. Tex. 2010)).
[15] *Rimkus*, 688 F. Supp. 2d at 612-13 (quoting *Zubulake v. UBS Warburg LLC (Zubulake IV)*, 220 F.R.D. 212, 217-18 (S.D.N.Y. 2003) (footnotes omitted)).
[16] *Rimkus*, 688 F. Supp. 2d at 613 (footnotes omitted).
[17] *See Rimkus*, 688 F. Supp. 2d at 614—15.
[18] *Id.* at 614 (collecting cases from these circuits).
[19] *Guzman*, 804 F.3d at 713 (quoting *Condrey v. SunTrust Bank of Georgia*, 431 F.3d 191, 203 (5th Cir.2005)); *see also Consol. Aluminum Corp. v. Alcoa, Inc.*, 244 F.R.D. 335, 344 (M.D. La. 2006) ("although courts in other circuits may permit the imposition of an adverse inference instruction based upon the gross negligence of the spoliating

faith, in the context of spoliation, generally means destruction for the purpose of hiding adverse evidence."[20]

Other circuits that require a finding of bad faith for a spoliation claim have utilized a similar standard. For instance, in *Mathis*, the Seventh Circuit remarked, "What remains—the possibility of an adverse inference—depends on persuading the court that the evidence was destroyed in 'bad faith'. [(Citation omitted)] That the documents were destroyed *intentionally* no one can doubt, but 'bad faith' means destruction for the purpose of hiding adverse information."[21] In *Greyhound Lines, Inc. v. Wade*, the Eighth Circuit explained:

> A spoliation-of-evidence sanction requires "a finding of intentional destruction indicating a desire to suppress the truth." [*Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 746 (8th Cir. 2004)]; *see Richter v. City of Omaha,* 273 Neb. 281, 729 N.W.2d 67, 71–73 (2007) (unfavorable inference where "spoliation or destruction was intentional and indicates fraud and a desire to suppress the truth"). "Intent is rarely proved by direct evidence, and a district court has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witnesses in a particular case, and other factors." *Morris v. Union Pac. R.R.,* 373 F.3d 896, 902 (8th Cir. 2004). . . .
>
> The ultimate focus for imposing sanctions for spoliation of evidence is the intentional destruction of evidence indicating a desire to suppress the truth, not the prospect of litigation. *Morris,* 373 F.3d at 901.[22]

Even in those circuits that do not require a finding of bad faith for spoliation, the courts provide a similar definition of bad faith. For example, in *Micron Tech., Inc. v. Rambus Inc.*, the Delaware district court imposed the dispositive sanction of dismissal against the defendant.[23] The district court recognized negligent spoliation but noted that culpability was a factor in assessing

---

party, the Fifth Circuit has held that such a sanction may only be imposed upon a showing of 'bad faith' or intentional conduct by the spoliating party." (citations omitted)).
[20] *Guzman*, 804 F.3d at 713. (citing *Mathis v. John Morden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir.1998)).
[21] *Mathis*, 136 F.3d at 1155 (emphasis in original); *see also Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 644 (7th Cir. 2008) (relying on *Mathis* and holding same).
[22] *Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032, 1035 (8th Cir. 2007).
[23] *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1316 (Fed. Cir. 2011).

10

sanctions.[24] On appeal, the defendant argued that the district court erred in determining that it acted in bad faith.[25] In that context, the Federal Circuit provided the following description of bad faith:

> To make a determination of bad faith, the district court must find that the spoliating party "intended to impair the ability of the potential defendant to defend itself." *Schmid*, 13 F.3d at 80. *See also Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 644 (7th Cir. 2008) ("A document is destroyed in bad faith if it is destroyed 'for the purpose of hiding adverse information.'") (citation omitted); *In re Hechinger Inv. Co. of Del., Inc.*, 489 F.3d 568, 579 (3d Cir. 2007) (noting that bad faith requires a showing that the litigant "intentionally destroyed documents that it knew would be important or useful to [its opponent] in defending against [the] action"); *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 925 (1st Cir. 1988) (finding bad faith "where concealment was knowing and purposeful," or where a party "intentionally shred[s] documents in order to stymie the opposition"); *Gumbs v. Int'l Harvester, Inc.*, 718 F.2d 88, 96 (3d Cir. 1983) (noting that an adverse inference from destruction of documents is permitted only when the destruction was "intentional, and indicates fraud and a desire to suppress the truth") (citation omitted). The fundamental element of bad faith spoliation is advantage-seeking behavior by the party with superior access to information necessary for the proper administration of justice.[26]

*Micron* ultimately remanded to the district court to provide grounds for its finding of bad faith.[27]

Numerous district courts within the Fifth Circuit have also found that, to constitute bad faith, the spoliating party must essentially act with the purpose of destroying the evidence. For instance, in *Consolidated Aluminum Corp.*, this Court explained, "[f]or the spoliator to have a 'culpable state of mind,' it must act with fraudulent intent and a desire to suppress the truth."[28] In *Tammany Parish Hospital Service District No. 1 v. Travelers Property Casualty Co. of America*, the Eastern District of Louisiana explained that "[t]he theory of spoliation of evidence refers to an intentional destruction of evidence for [the] purpose of depriving opposing parties of its

---

[24] *See Micron Tech., Inc. v. Rambus Inc.*, 255 F.R.D. 135, 148-49 (D. Del. 2009).
[25] *Micron*, 645 F.3d at 1316.
[26] *Id.* at 1326.
[27] *Id.* at 1328.
[28] *Consolidated Aluminum Corp.*, 244 F.R.D. at 343–44.

11

use."[29] In *Thomas v. Tangipahoa Parish School Board*, the Eastern District of Louisiana recently explained:

> The Fifth Circuit has not further defined "bad faith" in the spoliation context, but has defined it under Louisiana law as
> [t]he opposite of "good faith," generally implying or involving actual or constructive fraud, or a design to mislead and deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties but by some interested or sinister motive. The term bad faith means <u>more than mere bad judgment or negligence, it implies the conscious doing of a wrong for dishonest or morally questionable motives</u>.
> <u>Industrias Magromer Cueros y Pieles S.A. v. Louisiana</u>, 293 F.3d 912, 922 (5th Cir. 2002) (emphasis added); <u>compare Black's Law Dictionary</u> BAD FAITH (10th ed. 2014) ("dishonesty of belief, purpose, or motive") <u>with id.</u> GOOD FAITH ("A state of mind consisting in (1) honesty in belief or purpose, (2) faithfulness to one's duty or obligation, . . .or (4) absence of intent to defraud or to seek unconscionable advantage."). As these definitions emphasize, the evidence must show that a party had a dishonest, deceptive or culpable state of mind for the court to find that the party acted in bad faith.[30]

## ANALYSIS

Here, it is clear that Defendants understandably and reasonably was considering having a physician of their own choice examine Rogers before any surgery was performed. That desire was made clear to Plaintiffs' counsel who acknowledged the request and agreed to provide information regarding the nature of the proposed surgery as well as the date it was to be performed. Implicit in that agreement (if not explicit[31]) was that the information would be

---

[29] *St. Tammany Par. Hosp. Serv. Dist. No. 1 v. Travelers Prop. Cas. Co. of Am.*, 250 F.R.D. 275, 277 (E.D. La. 2008) (citing *Burge v. St. Tammany Parish Sheriff's Office*, No. 91-2321, 96-0244, 2000 WL 815879, at *3 (E.D. La. June 22, 2000), *aff'd sub nom. Burge v. St. Tammany Par.*, 336 F.3d 363 (5th Cir. 2003)).
[30] *Thomas v. Tangipahoa Par. Sch. Bd.*, No. 14-2814, 2016 WL 3542286, at *2 (E.D. La. June 29, 2016).
[31] In his October 21, 2015 email to Plaintiffs' counsel summarizing their prior communications, he states "We again asked on October 14, 2015 for records relating to the treatment of Mr. Rogers *to set an IME before any procedure*." (Doc. 65-8 at 1, emphasis added; see also Doc. 65-8 at 1.)

provided in such time before the surgery took place that Defendants could utilize the information to decide whether to have its own IME performed. Indeed, on September 25, 2015, Plaintiffs' counsel emailed counsel for Defendants as follows:

> "Just received a call from Kyrus [Rogers] after his consultation with Dr. Brennan. Dr. Brennan said he will be in contact about the date of the surgery after he receives approval from us. I also called Melissa Parish [who apparently works with MLS] about this. I left a message for Chassidy for Melissa to return my call. Kyrus said he's anxious but excited about the surgery." (Doc. 66-1 at 8.)

Later the same day, Plaintiffs' counsel sent another email to counsel for Defendants.

> "Kyle: I will find out the surgery recommended and the schedule. *Sasha: do we have a description of the surgery that's being recommended for Mr. Rogers? The schedule? Please make the calls to find out. Thank you.*" (Doc. 66-1 at 1-3, emphasis in original. Presumably Sasha is an employee of counsel for Plaintiffs.)

Therefore there is no doubt that Plaintiffs had a duty to preserve this evidence and the evidence was clearly relevant. Thus the critical issue here is whether Plaintiffs or their counsel acted with a "culpable state of mind", i.e. in bad faith for the purpose of destroying the evidence.

On October 6, 2015, Rogers' surgery was scheduled for October 22, 2015. Yet, according to Plaintiffs, for a period of two weeks (until October 20, 2015), Plaintiffs' counsel remained unaware that the surgery was scheduled. Counsel represents that it was not until October 20, 2015 that he first learned the date of the surgery and this representation appears to be supported in the documentation. (Exhibit A to Plaintiffs' opposition, Doc. 66-1 at 31-38. transmittal from Parish of MLS to Plaintiffs' counsel attaching Dr. Brennan's dictation of 10/14 setting Rogers' surgery for 10/22.) Indeed, Defendants do not challenge this representation or the supporting documentation.

The only explanation given by Plaintiffs' counsel for the two week delay is as follows: "With multiple files in litigation, Plaintiffs' counsel does not micromanage a client's medical treatment. In a case like the one at hand, MLS is cleared to arrange for a client's medical treatment. Plaintiffs' counsel's involvement is unnecessary. The care provider and the client primarily handle scheduling." (Doc. 66 at 2.) Given the affirmative (and reasonable) request for this information by counsel for Defendants, Plaintiffs' counsel's understanding of the reason for the request and his affirmative commitment to provide this information, this explanation rings hollow.

But it is also true that on September 25, Plaintiff's counsel advised Defendants' counsel that surgery had been recommended for Rogers (Doc. 65-1 at 3; 65-4 at 1-2) and on September 30, that the proposed surgery was a two level cervical discectomy and fusion. (Exhibit F to motion, Doc. 65-7 at 1.) Yet, Defendants did not ask for an IME at either point.

Furthermore, both sides agree that Plaintiffs' counsel did advise counsel for Defendants on October 20, 2015 of the surgery to be performed the following day. Defendants do not state whether or not their counsel requested that surgery be deferred until an IME could be performed and, if such a request was made, the nature of the response. Presumably, had such a request been made and denied, Defendants would have said so in their briefing. If a request to delay the surgery was not made, even under the exigent circumstances created by Plaintiffs' last-minute notice, the Court wonders why it was not made and, if made but denied, why relief was not sought from this Court.

Furthermore, while it is clear to the Court that counsel for Plaintiffs failed to live up to the spirit, if not the letter, of his commitment, this is a far cry from proving that counsel's conduct was deliberate and made with the intention to conceal the evidence. This is Defendants'

14

burden in order to justify the relief requested, whether the relief be in the form of excluding the evidence or giving the jury an adverse presumption instruction. Defendants have failed to meet this burden and, accordingly, the evidence of surgery will not be excluded nor will an adverse presumption instruction be given. However, the Court instructs counsel for Plaintiffs that he is not to attempt to use at trial the fact that Defendants' IME expert did not physically examine Rogers before the surgery and that therefore his opinion is less worthy of acceptance.

Signed in Baton Rouge, Louisiana, on March 6, 2017.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**